# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5106 | **DATE** | 3/29/2004 |
| **CASE TITLE** | Novak v. Wagnitz | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The decision of the bankruptcy court is affirmed in part and vacated in part. The bankruptcy court rightly concluded that a debtor's ability to pay does not alone suffice for dismissal under § 707(a). The court did not address, however, whether other factors may support a finding of "cause" to dismiss under that section. The case is remanded for further consideration of Novak's motion in light of that issue.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | 1 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/29/2004 | |
| | courtroom ETV deputy's initials | Date/time received in central Clerk's Office | date mailed notice ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>KELLY L. WAGNITZ,<br><br>    Debtor.<br>_____<br>JOHN NOVAK,<br><br>    Appellant,<br><br>v.<br><br>KELLY L. WAGNITZ,<br><br>    Appellee. | No. 03 C 5106<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER    MAR 3 0 2004

Appellant John Novak appeals a June 4, 2003 order of the bankruptcy court denying his motion for extension of time to file an adversary proceeding against Debtor Kelly Wagnitz ("Wagnitz" or "Debtor"), seeking dismissal of her Chapter 7 bankruptcy petition under 11 U.S.C. § 707(a). Novak sought to conduct further discovery to determine whether Wagnitz had filed the petition in bad faith which, he claimed, constitutes "cause" for dismissal under the statute. Without directly addressing whether bad faith is in fact "cause" for dismissal, the bankruptcy court found that Novak's assertion of bad faith was based solely on his belief that Wagnitz has the ability to repay her debts, and that such ability cannot alone support dismissal under § 707(a). Novak appealed to this court, arguing that Wagnitz's ability to repay her debt is just one factor in the totality of circumstances suggesting bad faith. For the reasons set forth here, the decision of the bankruptcy court is affirmed in part and vacated in part.

## BACKGROUND

The parties agree that there are no factual issues relevant to this appeal and that the court need only decide legal questions regarding the proper scope of 11 U.S.C. § 707(a). The court will

nonetheless provide a brief factual background to place the legal dispute in context. The facts are drawn from the parties' submissions before the bankruptcy court and are assumed true solely for purposes of this appeal.

Wagnitz filed for bankruptcy under Chapter 7 of the Bankruptcy Code on December 10, 2002. At that time, she identified Novak as a creditor in the amount of $18,805.20.[1] (Debtor's Response to Creditor's Motion for Extension of Time to File Complaint for Bad Faith Filing (hereinafter "Debtor Response"), at 1.) Wagnitz is employed as a Senior Special Agent with the Illinois Department of Revenue/Illinois Gaming Board and earns $64,000 per year. She reportedly takes home $4,454 per month in net income and has total monthly expenses of $5,990. (Schedule I and J, Exs. to Novak's Motion for Extension of Time to File Complaint for Bad Faith Filing (hereinafter "Novak Motion").) Wagnitz is currently married but separated and has two children – a 7-month-old by her estranged husband, Craig Wagnitz, and a 13-year-old by a former husband, George Jackowiec. (Debtor Response, at 2.)

On January 6, 2003, Wagnitz and Novak attended a § 341 meeting of creditors before interim bankruptcy trustee Joseph Voiland. 11 U.S.C. § 341 ("[w]ithin a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors"). At the meeting, Wagnitz indicated that her estranged husband Craig had been unemployed for more than a year and that she had not received any support from him during that time. Wagnitz acknowledged receiving $1,671 per month in child support from her ex-husband, George Jackowiec, but she informed Novak and his counsel that shortly after she filed for bankruptcy, she learned that Jackowiec had lost his job as a financial consultant with Peat Marwick and would be unable to maintain the payments. (Debtor Response, at 2.) Wagnitz stated that she rents a residence in Geneva, Illinois, rather than in a community with a lower cost of living,

---

[1] The record does not indicate the basis for Wagnitz's $18,805.20 debt to Novak.

2

because Jackowiec lives there and she wants their 13-year-old son to be near to him. Wagnitz indicated that the most pressing reason for her bankruptcy was that Novak had obtained a judgment against her and was starting to garnish her wages which, she claimed, was "detrimental to the survival of the debtor and her children." (*Id.* at 2-3.)

After the § 341 meeting, interim trustee Voiland reported the matter to the office of the U.S. Trustee as a no-asset bankruptcy. (*Id.* at 2.) Novak, however, began requesting information from Wagnitz, Craig Wagnitz, and Jackowiec, apparently in an effort to establish that Wagnitz filed the Chapter 7 petition in bad faith. (*Id.* at 3.) Wagnitz produced a check tendered to her attorneys for payment of bankruptcy fees that was returned for insufficient funds. In addition, Jackowiec produced a letter confirming that he had been fired from Peat Marwick and that his child support payments would be reduced from $1,671 per month to $110 per month. Jackowiec also testified at a deposition that his son lives in Geneva to be close to him, and that Wagnitz has to pay ongoing expenses for a tutor because the son has a reading disability. (*Id.* at 3-4.)

On February 10, 2003, Novak filed a Motion for Extension of Time to File Complaint for Bad Faith Filing, arguing that "[c]onsidering Debtor's income, debts, and lifestyle ascertained from Schedule J, creditor is now conducting discovery in order to ascertain whether he will file an action to dismiss the debtor's petition as a bad faith filing" pursuant to § 707(a). (Novak Motion ¶ 5.) According to Novak, there is evidence that Wagnitz has the ability to repay her debt; that she filed Chapter 7 bankruptcy solely to frustrate one particular creditor (Novak); that she has not made any attempt to pay Novak; and that she is unwilling to make any lifestyle changes. In his reply brief, Novak cited *In re Collins*, 250 B.R. 645 (Bankr. N.D. Ill. 2000), where the court adopted a "totality of the circumstances" for determining bad faith, apparently deeming "bad faith" as sufficient to establish cause for dismissal under § 707(a). (Reply Brief to Debtor's Motion to Determine Standing (hereinafter "Novak Reply"), at 2-3.) Wagnitz opposed the motion, arguing that it was

premised solely on her ability to repay her consumer debt, which is an issue that can only be raised by the court or by a bankruptcy trustee under § 707(b). (Debtor Response, at 9.)

On June 4, 2003, the bankruptcy court denied Novak's motion, finding that it was based exclusively on Novak's belief that Wagnitz is able to repay her debt. In the court's view, "[m]otions to dismiss based upon the ability to repay debts must be brought pursuant to § 707(b) by a trustee." (Memorandum Opinion Denying Creditor's Motion for Extension of Time to File Complaint for Bad Faith Filing (hereinafter "Opinion"), at 3-4.) *See, e.g., Costello v. Bodenstein*, No. 01 C 9696, 2002 WL 1821663, at *3 (N.D. Ill. Aug. 7, 2002) (ability to pay is the "primary" or "principal" factor in determining "substantial abuse" under § 707(b)).

## DISCUSSION

### I. Standard of Review and Jurisdiction

This court has subject matter jurisdiction over Novak's appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), which vests the district court with jurisdiction over appeals from "final judgments, orders and decrees" issued by the bankruptcy court. The district court functions as an appellate court when reviewing bankruptcy court decisions. *Bielecki v. Nettleton*, 183 B.R. 143, 145 (N.D. Ill. 1995) (citing FED. R. BANKR. P. 8013). In a bankruptcy appeal, the court examines the "bankruptcy court's factual findings for clear error and its legal conclusions *de novo*." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994). The parties in this case raise exclusively questions of law, which the court will review *de novo*.

This case presents an issue of first impression in the Seventh Circuit; namely, whether bad faith constitutes "cause" for dismissal under § 707(a) of the Bankruptcy Code and, if so, the proper test for determining bad faith. The bankruptcy court did not directly decide this issue but considered only "whether a creditor may bring an action under § 707(a) based on an alleged ability

to repay debts." (Opinion, at 1.) Novak argues that his motion was based on factors beyond Wagnitz's ability to repay which can support a dismissal for cause under § 707(a).

## II.     Section 707

The court begins by reviewing the text of the statute itself. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Section 707(a) states:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under Chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a). The enumerated grounds for a "for cause" dismissal are not exhaustive, but merely illustrative. *In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000) (citing 11 U.S.C. § 102(3)) (defining "including," for purposes of Title 11, to be "not limiting"). The only guidance Congress provided as to the meaning of "cause" in this section is an admonition that the "ability of the debtor to repay his debts in whole or in part [does not] constitute[] adequate cause for dismissal." H.R. Rep. 95-595, at 380 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6336. *See also In re Pedigo*, 296 B.R. 485, 487 (Bankr. S.D. Ind. 2003). Except where the debtor's failure to file § 521(1) information is at issue, it is clear that any interested party may move for dismissal for cause under § 707(a). *See, e.g., In re Weeks*, __ B.R. __, 2004 WL 413253, at *2 (Bankr. E.D. Mich. 2004) ("§ 707(a) actions may be brought by any party").

Another provision, 11 U.S.C. § 707(b), authorizes the court to dismiss a bankruptcy petition only on its own motion or that of the United States trustee where the debtor is guilty of "substantial abuse" of the bankruptcy process. Section 707(b) did not exist when the Bankruptcy Code was first enacted but was added in the Bankruptcy Amendments and Federal Judgeship Act of 1984,

Pub. L. No. 98-353, S 312, 98 Stat. 333, 355. *In re Pedigo*, 296 B.R. at 487. Section 707(b) states:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). Congress introduced the concept of "substantial abuse" in an effort to "address perceived abuses of the existing law and curb the precipitous rise in personal bankruptcies." *In re Pedigo*, 296 B.R. at 487. Congress did not, however, define the term "substantial abuse" or explain whether or how it differs from "for cause" dismissals under § 707(a).

### III. Case Law

#### A. Bad Faith as "Cause" for Dismissal

Courts that have considered the meaning of "cause" under § 707(a) have reached conflicting conclusions as to whether bad faith fits within the definition. Some courts have assumed that bad faith is the equivalent of cause, while others have suggested that bad faith is a separate jurisdictional requirement inherent in the provision. In addition, some courts rely on the "bad faith" terminology, while others focus on an absence of good faith. To complicate matters further, courts have not adequately clarified the relationship between a "for cause" dismissal under § 707(a) and a dismissal for "substantial abuse" under § 707(b). The following discussion illustrates these inconsistencies.

The Sixth Circuit was the first to weigh in on the issue of bad faith under § 707(a) in *In re Zick*, 931 F.2d 1124 (6th Cir. 1991). The debtor in *Zick* was a former employee of the creditor who violated a covenant not to compete by starting his own company and soliciting the creditor's customers. *Id.* at 1125. Following a court-ordered mediation, the creditor was awarded $600,000 for breach of contract. A few days later, the debtor petitioned for Chapter 7 bankruptcy relief "seeking dischargeability principally on [the creditor's] debt." *Id.* at 1125-26. The creditor objected

that the petition was brought in bad faith and argued that § 707(a) "allows the bankruptcy court to consider 'good faith' as a basis for dismissal of a Chapter 7 petition." *Id.* at 1126. The bankruptcy court and district court both agreed. *Id.* at 1126.

The Sixth Circuit affirmed that "lack of good faith is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court." *Id.* at 1127. The court stated, however, that lack of good faith

> should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*Id.* at 1129. *See also In re Weeks*, 2004 WL 413253, at *2 ("'for cause' objections under § 707(a) in the Sixth Circuit are limited to the most egregious instances of bad faith"); *In re Carbaugh*, 299 B.R. 395, 399 (Bankr. N.D. Tex. 2003) (bad faith may be cause for dismissal under § 707(a), but "the facts have to be extraordinary to justify the dismissal of a Chapter 7 liquidation case for bad faith"). The court found such factors present in the debtor's case based on his "malicious breach of a noncompetition agreement" and apparent attempt to avoid his obligations solely to the creditor by, for example, listing his mother and his wife as creditors. *Id.* In the court's view,

> [t]he Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors. Good faith and candor are necessary prerequisites to obtaining a fresh start. The bankruptcy laws are grounded on the fresh start concept. There is no right, however, to a head start.

*Id.* The court characterized good faith as a jurisdictional prerequisite to a Chapter 7 bankruptcy because it is "inherent in the purposes of bankruptcy relief." *Id.* (quoting *In re Jones*, 114 B.R. 917, 926 (Bankr. N.D. Ohio 1990)).

A few years later, the Eighth Circuit rejected the notion that bad faith supports dismissal under § 707(a). In *In re Huckfeldt*, 39 F.3d 829 (8th Cir. 1994), the debtor, a surgical resident, was ordered to pay some $241,000 in debts in a divorce decree. Approximately one week later, he filed

7

for Chapter 7 bankruptcy, listing assets of $1,250 and liabilities of $546,857. *Id.* at 830. He then accepted a fellowship paying $45,000 per year, substantially less than he could have earned as a practicing surgeon. The debtor's ex-wife and her parents (the creditors), apparently of the view that bad faith is equivalent to cause for dismissal under § 707(a), moved to dismiss the bankruptcy petition on that basis. The creditors alleged that the debtor commenced the proceedings to avoid paying his obligations under the divorce decree and shift responsibility for those debts onto the creditors. *Id.* The bankruptcy court dismissed the case and was affirmed by the district court. *Id.*

The Eighth Circuit was persuaded by a more "narrow, cautious approach to bad faith" set forth in *In re Khan*, 172 B.R. 613 (Bankr. D. Minn. 1994). *Khan* had urged that bad faith sufficient to support dismissal for cause under § 707(a) should be "limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction." 39 F.3d at 832. With that principle in mind, the Eighth Circuit in *Huckfeldt* rejected the use of the phrase "bad faith" and found that "the § 707(a) analysis is better conducted under the statutory standard, 'for cause.'" *Id.* The court explained,

> some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith. But framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7... If the bankruptcy court elects instead to act under the inherent judicial power to punish a bad faith litigant, that action should not be taken under § 707(a).

*Id.* The *Huckfeldt* court found adequate cause to dismiss the debtor's petition, without resort to the "bad faith" terminology, because he manipulated his earnings to frustrate the divorce decree and to push his ex-wife into bankruptcy. The debtor was not, in the court's view, an "'honest but unfortunate debtor' entitled to the equitable relief of a Chapter 7 liquidation." *Id.* at 832-33.[2]

---

[2] *Compare In re Horan*, 304 B.R. 42, 46 (Bankr. D. Conn. 2004) ("[i]f this court were writing on a cleaner slate, the court similarly would reject the 'bad faith' label. However, . . . the court will accept the 'bad faith' label as a term of art for a certain class (or classes) of circumstances (prepetition in whole or in part) which, when analyzed under Section 707(a),

8

The Ninth Circuit similarly declined to hold that bad faith per se is a basis for dismissal under § 707(a). In *In re Padilla*, 222 F.3d 1184 (9th Cir. 2000), the debtor was accused of engaging in credit card "bust-out" – i.e., "accumulation of a consumer debt in anticipation of filing for bankruptcy." *Id.* at 1187-88. On a motion of the United States trustee, the bankruptcy court dismissed the debtor's bankruptcy petition as a bad faith filing under § 707(a). The Bankruptcy Court of Appeals reversed, finding that "the bankruptcy court erred in concluding [the debtor's] filing constituted bad faith requiring dismissal under § 707(a)." *Id.* at 1188. The United States trustee appealed to the Ninth Circuit, which followed the Eighth Circuit's decision in *In re Huckfeldt* and held that "bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)." *Id.* at 1191. In reaching this conclusion, the court noted that the Bankruptcy Code does explicitly mention "good faith" in Chapters 11 and 13, both of which address bankruptcies that require debtors to maintain ongoing relationships with creditors. Chapter 7, on the other hand, does not contemplate an ongoing relationship between debtors and creditors and makes no mention of a good faith requirement. *Id.* at 1192-93. According to the court, "bad faith per se can properly constitute 'cause' for dismissal of a Chapter 11 or Chapter 13 petition but not of a Chapter 7 petition." *Id.* at 1193. The court found that the debtor's credit card "bust-out" was not cause for dismissal under § 707(a) because as a consumer debt, it is the type of misconduct contemplated by § 707(b)'s "substantial abuse" provision. *Id.* at 1188, 1194.

Shortly after the Ninth Circuit rendered its decision in *In re Padilla*, the Third Circuit reached a contrary conclusion in *In re Tamecki*, 229 F.3d 205 (3d Cir. 2000). The debtor in *Tamecki* sought to discharge approximately $35,000 in credit card debt owed to the creditor. The bankruptcy trustee moved to dismiss his Chapter 7 petition for "lack of good faith" under § 707(a). The trustee argued that the debtor's divorce, which had been pending for some seven years, was "right around

---

constitute 'cause' for dismissal").

the corner" and that he could soon obtain his unencumbered $50,000 share of the house on which he had claimed an exemption, an amount more than adequate to pay his debt. *Id.* at 206. The bankruptcy court dismissed the petition and the district court affirmed. Following *In re Zick*, the Third Circuit also affirmed. The court held that "Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing." *Id.* at 207. The court also found that "[o]nce a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith." *Id.* The creditor produced evidence that the debtor accrued over $35,000 in debt at a time when he was earning "less than one-tenth this amount," and that his imminent divorce would free up his $50,000 share of a jointly-owned house. *Id.* The court found no error in the bankruptcy court's decision to discount the debtor's self-serving response – i.e., that he accrued the debt for subsistence purposes; that he intended to repay the debt; and that he loved his wife and would take her back "in a heartbeat" – and affirmed the dismissal under § 707(a) for failure to establish good faith. *Id.* at 207-08.

As noted, the Seventh Circuit has not yet considered what constitutes "cause" for dismissal under § 707(a), or whether bad faith satisfies the cause requirement. Two cases from this district, however, have indicated that bad faith does support a "for cause" dismissal. Novak relies heavily upon *In re Collins*, 250 B.R. 645 (Bankr. N.D. Ill. 2000), in which the debtor filed for bankruptcy two weeks before judgment was entered against him in the amount of $525,000. *Id.* at 651-52. At the time, he held approximately $2.3 million in exempt assets and a home valued at $490,000. He earned net income in excess of $200,000 the year he filed for bankruptcy, plus an additional $5,000 to $6,000 per month in Social Security payments and pensions which was exempt from creditors. *Id.* at 652. The debtor had total monthly expenses of $11,525.65; he took his extended family (including five children and 20 grandchildren) on vacation every year, paying the entire bill (which totaled $13,000 the year of the bankruptcy); and he took an additional $5,000 trip to Mexico and a trip to Snowmass, Colorado. *Id.* at 653. The debtor admitted in his bankruptcy filings and in his

10

testimony before the bankruptcy court that he sought Chapter 7 relief so that he would not have to change this lifestyle. *Id.*

The creditor sought to dismiss the bankruptcy petition as a bad faith filing under § 707(a). After a trial on the merits, the bankruptcy court granted that motion. *Id.* at 652. The debtor appealed the decision but, for reasons unexplained, voluntarily dismissed the appeal. *Id.* at 653 n.1. The court nonetheless addressed the bad faith ruling as background for its decision on the creditor's motion for sanctions: "[w]hile this section contains a discussion of the law, it is not to be read as the holding of this opinion. It is merely a recitation of the facts of the hearing." *Id.*

The court stated that "[b]ad faith can constitute cause for dismissal under § 707(a)" and adopted a "totality of the circumstances" test for determining bad faith. *Id.* at 653. Applying that test, the court considered (1) "whether the debtor has the present ability to pay his debts if he chooses"; (2) "whether the debtor has manipulated the bankruptcy process to frustrate one particular creditor"; (3) "the absence of any attempt to pay creditors"; and (4) "whether the debtor is willing to make lifestyle changes to pay his debts." *Id.* at 654-55. The court found that all of these factors supported a finding of bad faith because he had several million dollars of exempt assets he could use to pay the debt if he so chose; he was admittedly trying to avoid paying a single creditor; he only filed for bankruptcy to get the one creditor "off his back"; and he refused to make changes to his arguably lavish lifestyle to pay his debts. *Id.* In the court's view, it "would be an affront to equity and good conscience to allow the debtor to manipulate the system as he seeks to do here." *Id.* at 655. *See also In re Merritt*, 211 F.3d 1269 (Table), 2000 WL 420681 (6th Cir. 2000) (affirming bad faith dismissal under § 707(a) where the debtor concealed assets, enjoyed a lavish lifestyle, had an annual income of over $96,000, made minimal effort to pay the creditor's judgment against him, and essentially pursued bankruptcy to avoid that single large debt).

In deciding that the creditor was entitled to sanctions for the debtor's frivolous arguments against the bad faith dismissal, the court noted that the totality of the circumstances test has been

11

widely adopted in many circuits for dismissal under both § 707(a) and § 707(b). *Id.* at 665. The court acknowledged, however, that "[m]ost . . . of the published opinions discussing the totality of the circumstances test involve motions to dismiss under § 707(b)." *Id.* at 654 (citing *In re Kornfield*, 164 F.3d 778, 783 (2d Cir. 1999) (referring to the totality of the circumstances test as "mainstream" in § 707(b) substantial abuse case); *In re Stewart*, 175 F.3d 796, 810 (10th Cir. 1999) (finding in § 707(b) case that "good faith" is a factor under the totality of the circumstances test)). The court also expressed concern about the debtor's reliance on "obscure, [and largely discredited] minority holdings of two bankruptcy courts that have determined no good faith filing requirement exists under § 707(a)." *Id.* at 666 (citing *In re Landes*, 195 B.R. 855, 860-61 (Bankr. E.D. Pa. 1996) and *In re Etcheverry*, 221 B.R. 524, 525 (Bankr. D. Colo. 1998)). According to the court:

> Had Collins discussed any of the law unfavorable to his position; had he mentioned and refuted any of the unfavorable material in the cases such as *Khan* and *Huckfeldt*, to which he did cite; had he made any attempt to distinguish § 707(a) from § 707(b), it might have been possible to conclude that he was making a good faith argument for change in or extension of the law. However, he did none of these things . . .

*Id.* at 666-67.

More recently in *In re American Telecom Corp.*, 304 B.R. 867 (Bankr. N.D. Ill. 2004), the court found that under Chapters 7, 11, and 13 of the Bankruptcy Code, "the concept of 'cause' has been interpreted to include a lack of good faith in filing the bankruptcy petition." *Id.* at 869. The court stated that it "must look at the totality of the circumstances . . . to determine whether the Bankruptcy Code is being used properly and fairly and, consequently, whether 'cause' exists to dismiss the case." *Id.* (quoting *In re Leavitt*, 209 B.R. 935, 940-41 (B.A.P. 9th Cir. 1997)). The court did not, however, set forth the factors to consider in making that determination.

An Indiana bankruptcy court adopted a much more restrictive interpretation of § 707(a) in *In re Pedigo*, 296 B.R. 485 (Bankr. S.D. Ind. 2003). The court first acknowledged that "the majority of courts . . . have, in fact, found that bad faith does constitute cause for dismissal under section

707(a)." *Id.* at 488. The court noted, however, that those cases cited to Chapters 11, 12, and 13, where good faith is written into the Code, whereas Chapter 7 does not mention that concept. *Id.* (citing *In re Padilla*, 222 F.3d at 1192) (Chapter 7 does not contemplate any ongoing relationship between debtors and creditors). The court also rejected the notion that § 707(a) includes "substantial abuse" as an example of "cause," finding that such an interpretation would render § 707(b) superfluous. *Id.* at 489. In the court's view,

> the boundary between the two subsections is this: section 707(a) authorizes a dismissal for the debtor's failure to comply with bankruptcy procedures and is not conditioned on that debtor's motive for filing, and section 707(b) authorizes a dismissal for "substantial abuse" only as to an individual whose debts are primarily consumer debts. Further limitations on an individual's right to choose a course of liquidation must await future legislation.

*Id.* at 489-90. The court denied the bankruptcy trustee's motion to dismiss the debtor's bankruptcy petition under § 707(a) as a bad faith effort to defeat the collection efforts of one creditor while maximizing his equity in exempt property: "this Court does not find statutory authority to examine the Debtor's motives for filing chapter 7 and declines to read 'bad faith' as 'cause' under section 707(a)." *Id.* at 490.

### B. Tests for Determining Bad Faith

Courts that have accepted bad faith as a basis for dismissal under § 707(a) nonetheless disagree as to the proper test for determining such "bad faith." Two bankruptcy courts in this district have endorsed a "totality of the circumstances" test, described above. *In re Collins*, 250 B.R. at 654-55; *In re American Telecom Corp.*, 304 B.R. at 869. Other courts have suggested that bad faith requires a showing of egregious conduct, such as "using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction." *In re Huckfeldt*, 39 F.3d at 832 (quoting *In re Khan*, 172 B.R. at 625 n.23) (bad faith includes "manifest dishonesty toward a legal tribunal" such as "systematic and deliberate misstatements or

13

omissions . . . ; knowingly false testimony . . . ; and intentional acts to hinder the trustee in the administration of the estate").

Still other courts have adopted the so-called "smell test," or some version of it, weighing such factors as:

> (1) the debtor reduced his creditors to a single creditor in the months prior to filing his petition; (2) the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle; (3) the debtor filed the case in response to a judgment pending litigation, or collection action; there is an intent to avoid a large single debt; (4) the debtor made no effort to repay his debts; (5) the unfairness of the use of Chapter 7; (6) the debtor has sufficient resources to pay his debts; (7) the debtor is paying debts to insiders; (8) the schedules inflate expenses to disguise financial well-being; (9) the debtor transferred assets; (10) the debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors; (11) the debtor employed a deliberate and persistent pattern of evading a single major creditor; (12) the debtor failed to make candid and full disclosure; (13) the debts are modest in relation to the assets and income; and (14) there are multiple bankruptcy filings or other procedural "gymnastics."

*In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995). *See also In re Zick*, 931 F.2d at 1128 (bankruptcy court did not err in finding bad faith based on factors (1), (2), (3), and (5)); *In re Marsico*, (Bankr. D.N.H. Jan. 5, 2004) (adopting a modified four-factor test including misrepresentation of facts and manipulation of the Bankruptcy Code; history of filings and dismissals; intention to defeat state court litigation; and the presence of egregious behavior). The court notes that many of the "smell test" factors appear to overlap or repeat each other. In any event, the presence of only one of these factors generally will not support a bad faith finding. *Id.* *See also In re Zick*, 931 F.2d at 1129 ("[d]ismissal based on a lack of good faith must be undertaken on an ad hoc basis").

Under any version of this test, one factor in particular is of key relevance: the debtor's ability to pay. Though it is not alone sufficient for dismissal under § 707(a), most courts have held that ability to pay is a relevant inquiry in determining bad faith. *See, e.g., In re Merritt*, 2000 WL 420681, at *3 ("post-petition ability to repay debts . . . is a relevant inquiry"); *In re Spagnolia*, 199 B.R. at 366 (listing post-petition ability to pay as a factor); *In re Collins*, 250 B.R. at 654-55 (stating

14

that present ability to pay is the "most important factor of the totality of the circumstances test"); *McDow v. Smith*, 295 B.R. 69, 79 n.22 (E.D. Va. 2003) (listing ability to repay and lavish lifestyle as a single factor); *In re Cappuccetti*, 172 B.R. 37, 40 (Bankr. E.D. Ark. 1994) (finding bad faith in part based on debtor's ability to pay). *But see In re Studdard*, 159 B.R. 852, 856 (Bankr. E.D. Ark. 1993) (ability to repay debts by lowering children's college payments and taking away their cars alone justified bad faith dismissal under § 707(a)). At least one court, however, has taken the contrary position that "a debtor's ability to pay in the future is not a factor a court should consider in a motion to dismiss pursuant to § 707(a). It is only a consideration of 'substantial abuse' pursuant to § 707(b)." *In re Keobapha*, 279 B.R. 49, 53 (Bankr. D. Conn. 2002). See also *In re Pedigo*, 296 B.R. at 489-90 n.3 ("[a]lthough a debtor's ability to pay his or her debts is a factor to consider in determining whether to dismiss or convert under § 707(b), that factor does not constitute substantial abuse *per se*").

## IV. Analysis

In this court's view, the bankruptcy court properly concluded that ability to repay is not alone sufficient to justify dismissal under § 707(a). Ability to pay is the primary consideration under § 707(b)'s substantial abuse test, *Costello*, 2002 WL 1821663, at *3 (noting that five of six courts of appeals that addressed the "substantial abuse" standard agree that "the 'primary' or 'principal' factor is the debtor's ability to repay his debts"), but it is clear that Congress did not contemplate dismissal of cases under § 707(a) solely on that basis. See H.R. Rep. 95-595, at 380 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6336 ("ability of the debtor to repay his debts in whole or in part [does not] constitute[] adequate cause for dismissal"). In this court's view, however, the bankruptcy court erred in assuming that Novak's argument was limited to that single factor. His initial motion made only a somewhat ambiguous reference to Wagnitz's "income, debts, and lifestyle," but he did cite *In re Collins*, which sets forth the totality of the circumstances test. (Novak

Motion ¶ 5.) More importantly, Novak clarified in his reply brief that he intended to pursue evidence of Wagnitz's efforts to frustrate a single creditor (Novak), her failure to attempt to repay him, and her unwillingness to make lifestyle changes, in addition to her ability to repay the debt. (Novak Reply, at 2-3.) The bankruptcy court did not address any of these potential arguments in denying Novak's Motion for Extension of Time to File Complaint for Bad Faith Filing.

The court takes no position as to whether bad faith is cause for dismissal under § 707(a); whether the totality of the circumstances test sets forth the proper standard for determining bad faith; nor whether Novak will be able to establish any of the relevant factors. Those are determinations for the bankruptcy court in the first instance. The bankruptcy court's order denying Novak's motion is vacated to the extent the court failed to consider whether factors beyond ability to pay may be considered in determining "cause" for dismissal under § 707(a) and, if so, whether Novak should be granted an opportunity to conduct further discovery and present evidence on those factors.

## CONCLUSION

For the reasons stated above, the decision of the bankruptcy court is affirmed in part and vacated in part. The bankruptcy court rightly concluded that a debtor's ability to pay does not alone suffice for dismissal under § 707(a). The court did not address, however, whether other factors may support a finding of "cause" to dismiss under that section. The case is remanded for further consideration of Novak's motion in light of that issue.

ENTER:

Dated: March 29, 2004

REBECCA R. PALLMEYER
United States District Judge